Ann Jernow (SBN 197060)
ajernow@sterlington.net
**STERLINGTON, PLLC**
228 Park Avenue S #97956
New York, New York 10003
Tel. 332-910-5742

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Nosirrah Management, LLC**, a Delaware limited liability company,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>**Franklin Wireless Corp.**, a Nevada corporation,<br><br>　　　　　　　Nominal Defendant,<br><br>and<br><br>**O.C. Kim**, a California resident,<br><br>　　　　　　　Defendant. | Case No. 3:21-cv-01316-CAB-JLB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>Date: November 1, 2021<br><br>Honorable Cathy Ann Bencivengo |

# TABLE OF CONTENTS

STATEMENT OF FACTS ...................................................................................... 1
ARGUMENT ........................................................................................................... 3
  (1)  Motion to Dismiss Standard. ......................................................................... 3
  (2)  The Court Must Strike Defendants' Improper Attempt at Incorporating Material Beyond the Pleadings in a Rule 12(b)(6) Motion. .................................. 4
  (3)  The Complaint States a Plausible Claim for Recovery of Short-Swing Profits Under 15 U.S.C. §78p(b). ..................................................................... 6
    a.  Section 16(b) Imposes Strict Liability on Insiders. ..................................... 6
    b.  The Complaint's Allegations Support a Reasonable Inference that Defendant O.C. Kim is a Beneficial Owner of Shares Purchased by Rachel. ...... 7
    c.  Even if the Improper Declarations Submitted by Defendants are Considered, the Complaint States a Claim. ......................................................... 11
      i.  Defendants' Proposed Explanation of the Facts Does Not Negate Plaintiff's Claim. ................................................................................................. 12
      ii.  Defendants Misrepresent the Contents of the Complaint. ..................... 13
    d.  *Probility* Does Not Support Dismissal. ..................................................... 15
  (4)  Defendants' Alternative Rule 12(c) Motion on the Pleadings is Procedurally Improper and Premature and Must Be Denied. ................................................. 16
CONCLUSION ..................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Advanced Risk Managers, LLC v. Equinox Mgmt. Grp., Inc.*,
  No. 19-CV-03532-DMR, 2019 WL 6716292 (N.D. Cal. Dec. 10, 2019) ............. 6
*Andes Indus., Inc. v. Cheng Sun Lan*, 774 F. App'x 358 (9th Cir. 2019) ................. 4
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 3
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 3
*Cook v. Brewer*, 637 F.3d 1002 (9th Cir. 2011) ......................................................... 4
*Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221 (2012) ........................... 8
*Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005) ............................................... 16
*Emily O. v. Regents of the Univ. of California*, No. CV-20-08159-AB-JEM,
  2021 WL 1535539 (C.D. Cal. Mar. 9, 2021) ............................................................ 5
*Foremost-McKesson, Inc. v. Provident Secs. Co.*, 423 U.S. 232 (1976) ................... 7
*Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883 (9th Cir. 2017) ...................... 4
*In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1079 (S.D. Cal. 2020) ................ 16
*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) ......................................................... 4
*Miller v. Sawant*, 811 F. App'x 408 (9th Cir. 2020) ................................................. 5
*Mueller v. Auker*, 700 F.3d 1180 (9th Cir. 2012) ...................................................... 5
*Probility Media Corp. v. Isen*, No. 3:17-CV-2583-CAB-WVG
  (S.D. Cal. Apr. 10, 2018) .................................................................................. 6, 15
*Roth v. Reyes*, 567 F.3d 1077 (9th Cir. 2009) ............................................................ 7
*Rubert-Torres v. Hosp. San Pablo, Inc.*, 205 F.3d 472 (1st Cir. 2000) ..................... 4
*S.E.C. v. Lipson*, No. 97 C 2661, 1997 WL 452701 (N.D. Ill. Aug. 6, 1997) ........... 7
*See Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528 (9th Cir. 1985) ..................... 5
*TwoRivers v. Lewis*, 174 F.3d 987 (9th Cir. 1999) .................................................... 4
*United States ex rel. Lazar v. S.M.R.T., LLC*, No. 318CV00822BENBGS,
  2021 WL 2258317 (S.D. Cal. June 3, 2021) ............................................................ 4
*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ......................................... 5, 6
*Whittaker v. Whittaker Corp.*, 639 F. 2d 516 (9th Cir. 1981) .................................... 7
*Whittaker v. Whittaker Corp.*, No. 75-2546-LEW, 1977 WL 1006
  (C.D. Cal. Mar. 22, 1977) ........................................................................................ 8

**Other Authorities**

15 U.S.C. §78p(b) ................................................................................................. 6, 12
17 C.F.R. § 240.16a–1(a)(2) ........................................................................................ 7
Fed. R. Civ. P. 12(b)(6) ................................................................................................ 3
Fed. R. Civ. P. 12(c) .............................................................................................. 4, 16
Fed. R. Civ. P. 12(d) ............................................................................................. 4, 16

Plaintiff, Nosirrah Management, LLC ("Plaintiff"), submits this Opposition to Nominal Defendant Franklin Wireless Corp. and Defendant O.C. Kim's Motion to Dismiss Complaint for Recovery of Short-Swing Profits Under 15 U.S.C. §78p(b), dated September 27, 2021 (the "Motion to Dismiss"). For the reasons set forth below, the Motion to Dismiss should be denied.

## STATEMENT OF FACTS

On September 25, 2020, Rachel (Haesook) Kim ("Rachel"), daughter of Franklin Wireless Corp. President O.C. Kim ("Defendant Kim" and, together with Franklin Wireless, "Defendants"), purchased in a private transaction 160,000 shares of Franklin Wireless common stock at price of $2.50 per share (the "September 25 Purchase"). Compl. ¶¶ 5, 8, 10. That day, Franklin Wireless stock price closed at $15.97 per share. Compl. ¶ 10. The purchase was reflected in a Form 4 "Statement of Changes in Beneficial Ownership" filed with the Securities and Exchange Commission ("SEC") by Defendant Kim. Compl. ¶ 8. Defendant Kim's Form 4 stated that he had indirect beneficial ownership over the stock, indicating that the purchase was made by his child (only later identified, upon Plaintiff's request, as Defendant Kim's daughter Rachel). Compl. ¶ 12. Within three months of Rachel's purchase of Franklin Wireless stock, on December 31, 2020, Defendant Kim sold 500,000 Franklin Wireless shares in a private transaction at a price of $15.00 per share, as reflected in a Form 4 filed by Defendant Kim (the "December 31 Sale"). Compl. ¶ 13.

On January 12, 2021, Plaintiff notified Franklin Wireless that the transactions described above resulted in short-swing profits under Section 16(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78p(b), and demanded that the company take action to recover such short-swing profits received by Defendant Kim from these and any other short-swing trades. Compl. ¶ 16. Franklin Wireless relayed to Plaintiff that the Board had investigated the transactions but determined that no consequences were in order, as Rachel, not

Defendant Kim, had purchased the shares in the September 25 transaction. Compl. ¶ 17.

Nevertheless, in further correspondence with Franklin Wireless, Defendants made statements that cast doubt as to Rachel's independence in the purchase transaction. From a financial perspective, Rachel's investment was extremely out of the ordinary for a person of her means and experience. Rachel obtained her Doctor of Pharmacy degree in 2017 and has worked as an inpatient pharmacist at UC San Diego Health since October 2018, earning between $98,661 and $167,574 annually for the last three years. Compl. ¶¶ 18, 20. Other than the shares of Franklin Wireless, Rachel's significant assets appear to consist of only (i) $35,000 in a 401(k) and IRA accounts (no other investments) (Plaintiff is unaware of the specific investments in such accounts) and (ii) a home purchased for $760,000 in 2019 which she financed, in part, with a $100,000 loan from Defendant Kim's wife and a $485,000 mortgage loan from Wells Fargo Bank. Compl. ¶ 20-21. Plaintiff is unaware of the exact amount of what is likely a considerable cost of insuring and carrying the home and servicing the Wells Fargo mortgage.

Further, other details surrounding Rachel's September 25 Purchase are either obscure or very unusual. Defendant Kim concedes that he arranged the September 25 Purchase, introducing Rachel to a Korean seller eager to dispose of Franklin Wireless shares. Compl. ¶ 23. Rachel hesitated because of the purchase's cost, but nonetheless entered into the agreement following an additional concession by the seller—a concession pursuant to which Rachel's payment would be "contingent." Compl. ¶ 23. Despite numerous requests from Plaintiff, Defendants have yet to explain, among other things, precisely what is contingent about the purchase, how Rachel paid or intends to be able to pay the $400,000 purchase price, why Rachel elected to commit $400,000 to a single block of shares notwithstanding her overall finances and investment portfolio, and why Defendant Kim chose to introduce the buyer to Rachel rather than purchasing the shares himself. Compl. ¶¶ 24, 25.

The September 25 Purchase and the December 31 Sale resulted in Defendant Kim realizing a profit of no less than $2,000,000 calculated using the "lowest-in, highest-out" method. Compl. ¶ 28.

After Franklin Wireless failed to take further action regarding Defendant Kim's trades, Plaintiff brought suit against Defendant Kim and against Franklin Wireless as nominal defendant on July 22, 2021, seeking to recover the full amount of short-swing profits from Defendant Kim.

## ARGUMENT

The Motion to Dismiss should be denied. First, Defendants' attempted introduction of factual disputes at the motion to dismiss stage by way of declarations of Defendant Kim and Rachel Kim beyond the scope of the Complaint is procedurally improper and, pursuant to Plaintiff's accompanying Motion to Strike Extrinsic Evidence, should be stricken. Second, the Complaint states a plausible claim for recovery of short-swing profits under 15 U.S.C. §78p(b), supporting a reasonable inference that Defendant O.C. Kim is the beneficial owner of the subject shares. Third, Defendants' alternative Rule 12(c) motion on the pleadings is premature.

**(1) Motion to Dismiss Standard.**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Court must liberally construe the complaint, "accepting all factual allegations in the complaint as true and drawing 'all reasonable inferences in favor of the nonmoving party.'" *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883,

886–87 (9th Cir. 2017) (quoting *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)).  Dismissal is only proper when "assuming all facts and inferences in favor of the nonmoving party, it appears beyond doubt that [the nonmoving party] can prove no set of facts to support its claims."  *Andes Indus., Inc. v. Cheng Sun Lan*, 774 F. App'x 358, 359 (9th Cir. 2019) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)); *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (same).

**(2) The Court Must Strike Defendants' Improper Attempt at Incorporating Material Beyond the Pleadings in a Rule 12(b)(6) Motion.**

Defendants open their Motion to Dismiss by stating that their Motion "is based upon this Notice and the Memorandum herein, and the pleadings and other papers on file in this action, *including the declarations* and exhibits filed herewith."  Mot. Dismiss at 1 (emphasis added).  Yet, Ninth Circuit precedent has long prohibited defendants' use of affidavits and declarations to support a motion to dismiss, unless these form the basis of the complaint.  The declarations of Defendant Kim and Rachel Kim are, of course, neither referenced in nor form the basis for the Complaint and are thus procedurally improper.[1]  They must be stricken.[2]

---

[1] The declaration of William Bauer, counsel for Nominal Defendant Franklin Wireless, attaches documents setting forth content that is referenced in the Complaint, and thus, with respect to that content, it is not objectionable.

[2] Pursuant to Rule 12(d), should the Court decide to consider matters beyond the pleadings on a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56" to which "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also United States ex rel. Lazar v. S.M.R.T., LLC*, No. 318CV00822BENBGS, 2021 WL 2258317, at *2 (S.D. Cal. June 3, 2021). However, conversion is generally disfavored if "(1) the motion comes quickly after the complaint was filed, (2) discovery is in its infancy and the nonmovant is limited in obtaining and submitting evidence to counter the motion, or (3) the nonmovant does not have reasonable notice that a conversion might occur." *Rubert-Torres v. Hosp. San Pablo, Inc.*, 205 F.3d 472, 475 (1st Cir. 2000).

"Affidavits and declarations . . . are not allowed as pleading exhibits unless they form the basis of the complaint," and unless they form the basis of the complaint, they may not be considered by a court ruling on a Rule 12(b)(6) motion. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (declaration of counsel attesting to agency's attempts to notify claimant of administrative forfeiture proceedings, attached to government's motion to dismiss, could not be considered by district court at motion to dismiss stage). A district court may consider *only* documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. *Emily O. v. Regents of the Univ. of California*, No. CV-20-08159-AB-JEM, 2021 WL 1535539, at *4 (C.D. Cal. Mar. 9, 2021) (refusing to consider declarations in determining the outcome of motion to dismiss where "[t]he parties dispute[d] the truth of the facts couched within the declarations" and "the declarations [we]re not incorporated by reference in the complaint"). Indeed, if the district court is to observe the prohibition against resolving factual disputes at the motion to dismiss stage, it must reject the contents

---

Because the Motion to Dismiss quickly followed the Complaint's filing (indeed, Defendants are yet to answer the Complaint), the Court should grant Plaintiff's accompanying Motion to Strike Extrinsic Evidence and refrain from converting the Motion to Dismiss into a motion for summary judgment.

Should the Court consider the declarations of Defendant Kim and Rachel Kim, however, it must appraise Plaintiff of its decision and give Plaintiff an opportunity to respond. *See Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1532 (9th Cir. 1985). As in any other Rule 56 motion, "[t]he opportunity to respond must include time for discovery necessary to develop facts justifying opposition to the motion." *Id.* at 1532.

Furthermore, should the Court grant the Motion to Dismiss, it must do so with leave to amend. Upon engaging in discovery, as Plaintiff is legally entitled to do should the Court elect to consider Defendants' extrinsic evidence, Plaintiff may be able to plead additional facts, and the Court cannot determine at this stage that amendment would be futile. *See Miller v. Sawant*, 811 F. App'x 408, 411 (9th Cir. 2020) (quoting *Mueller v. Auker*, 700 F.3d 1180, 1191 (9th Cir. 2012)).

of a declaration that challenges the truth of the complaint's well-pleaded facts. *See Advanced Risk Managers, LLC v. Equinox Mgmt. Grp., Inc.*, No. 19-CV-03532-DMR, 2019 WL 6716292, at *5 & n.2 (N.D. Cal. Dec. 10, 2019) (declining to consider declaration in motion to dismiss context when it was "neither judicially noticeable nor incorporated by reference in the complaint").

The declarations of Defendant Kim and Rachel Kim plainly neither form the basis for the Complaint nor are incorporated by reference in the Complaint. The declarations were prepared and executed *in response to* the Complaint. This alone disqualifies the declarations. *Ritchie*, 342 F.3d at 908 (holding that district court should not have considered declaration prepared in response motion to return unlawfully seized property, which the court treated as a civil complaint, as the declaration "was obviously not mentioned in the motion" and did not form its basis). Therefore, the declarations of Defendant Kim and Rachel Kim are improper. In accordance with Plaintiff's accompanying Motion to Strike Extrinsic Evidence, the declarations must be stricken.

### (3) The Complaint States a Plausible Claim for Recovery of Short-Swing Profits Under 15 U.S.C. §78p(b).

Because the Complaint establishes a plausible claim for recovery of short-swing profits, the Motion to Dismiss must be denied.

#### a. Section 16(b) Imposes Strict Liability on Insiders.

Section 16(b) of the 1934 Act provides that officers, directors, and holders of more than 10% of the publicly-listed stock of a company are liable to the company for any profits realized from any purchase and sale or sale and purchase of such stock within a period of six months. 15 U.S.C. §78p(b). In order to plead a claim under Section 16(b), Plaintiff only must allege: (1) a purchase and (2) a sale of securities (3) by an insider (4) within a six-month period (5) resulting in profit. *Probility Media Corp. v. Isen*, No. 3:17-CV-2583-CAB-WVG, at *1 (S.D. Cal. Apr. 10, 2018). "Section 16(b) was designed to prevent corporate insiders 'from

profiteering through short-swing securities transactions on the basis of inside information.'" *Roth v. Reyes*, 567 F.3d 1077, 1079 (9th Cir. 2009) (quoting *Foremost-McKesson, Inc. v. Provident Secs. Co.*, 423 U.S. 232, 234 (1976)). As a strict-liability provision, the statute requires disgorgement "without proof of intent to profit on the basis of such information." *Roth*, 567 F.3d at 1079.

### b. The Complaint's Allegations Support a Reasonable Inference that Defendant O.C. Kim is a Beneficial Owner of Shares Purchased by Rachel.

Defendants do not dispute the occurrence of a purchase and sale of securities within a six-month period resulting in profit. Nor do they contest the fact that Defendant Kim is an insider of Franklin Wireless. Their challenge, rather, hinges on whether Defendant Kim is the beneficial owner of his daughter Rachel Kim's shares. The allegations of the Complaint sufficiently set forth a plausible claim—indeed, a compelling claim—that he is the beneficial owner of the shares.

Under SEC regulations, "the term beneficial owner shall mean any person who, directly or indirectly, . . . has or shares a direct or indirect pecuniary interest in the equity securities" so traded. 17 C.F.R. § 240.16a–1(a)(2). Moreover, the SEC defines having a pecuniary interest in equity securities as "the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities." *Id.* § 240.16a–1(a)(2)(i). Depending upon the particular facts, an adult child's ownership of securities can be attributed to an insider as the insider's own beneficial ownership of securities, as is the ownership of relatives not residing in the insider's household. *See S.E.C. v. Lipson*, No. 97 C 2661, 1997 WL 452701, at *4 (N.D. Ill. Aug. 6, 1997) (rejecting defendant's argument for dismissal of claim for failure to report sale of shares, notwithstanding fact that shares were sold under name of adult son who lived separately, because defendant still had opportunity to profit from subject the transaction); *Whittaker v. Whittaker Corp.*, 639 F. 2d 516 (9th Cir. 1981) (adult son who exercised a controlling

influence over the purchase, sale and voting of his mother's securities was beneficial owner of said securities).[3] "'Beneficial ownership' is a factual issue . . . ." *Whittaker v. Whittaker Corp.*, No. 75-2546-LEW, 1977 WL 1006, at *6 (C.D. Cal. Mar. 22, 1977).

      Here, the Complaint's allegations, considered *in toto*, allow one to draw the reasonable inference that Defendant Kim has a pecuniary interest and beneficial ownership in his daughter Rachel's Franklin Wireless shares.  First, the Complaint pleads facts casting doubt on whether a person of Rachel's investment experience and financial ability would be able to (much less desire to) invest completely independently in speculative stock as Defendants claim Rachel did.  As noted above, she has been in the workforce for only a few years, has earned between $98,661 and $167,574 per annum, has a large financial obligation to cover taxes, mortgage, insurance and other costs of carrying a house, has virtually no investment experience, and has no diversification of investments relative to the Franklin Wireless stock.  Absent further explanation, the fact that Rachel concededly had to borrow $100,000 from her mother (Defendant Kim's wife), in addition to taking out a mortgage, to purchase the house plausibly implies both financial support from O.C. Kim and a judgment by the mortgage lender that the bank mortgage itself and the carrying costs exhausted Rachel's financial resources.  Thus, the Complaint accurately paints a picture of a novice investor at the outset of her professional career who was in no position to make the $400,000 September 25 Purchase, not of a seasoned speculator with the means to gamble three years' worth of gross earnings on a large block of restricted shares of a microcap stock.

---

[3] *Whittaker* was overruled on unrelated grounds in *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221 (2012).  Specifically, *Simmonds* overruled *Whittaker*'s holding that a plaintiff seeking recovery of short-swing profits under Section 16(b) may toll the applicable two-year statute of limitations beyond the point at which the plaintiff was aware, or should have been aware, of the facts underlying the claim.  *See id.* at 226-27.

1 | A plausible inference and potential explanation is that Defendant Kim may have some implicit interest in these shares or may have provided implicit support of one kind or another to make Rachel comfortable with having this investment in her name.

Second, the Complaint pleads facts from which one can deduce Defendant Kim's close connection to the subject transaction as well as the subject transaction's suspect nature. The Complaint pleads that Defendant Kim arranged the shares' purchase, introducing Rachel to a Korean seller eager to dispose of restricted shares even at their original purchase price—an 85% discount when compared to the closing price of Franklin Wireless stock on the date of purchase—allegedly because Korean legal restrictions had previously prevented the shares' sale. Compl. ¶ 23. The Complaint states that Rachel hesitated because of the purchase's $400,000 total cost, but nonetheless entered into the agreement following an *additional* concession by the seller—a condition pursuant to which Rachel's payment would be somehow "contingent." Compl. ¶ 23. Defendants have yet to explain precisely what is contingent about the purchase. Compl. ¶¶ 24, 25. Moreover, the Complaint also provides facts which may support an inference of Defendant Kim's financial support of Rachel, his wife's having previously extended a $100,000 loan to Rachel for the purchase of her residence. Compl. ¶ 20-21.

Based on the above allegations, the following questions remain:

  i. What were the discussions leading up to the September 25 Purchase?
  ii. Why did Defendant Kim introduce Rachel to the seller rather than purchase the shares himself, and what explicit or implicit commitments had Defendant Kim made before that to the seller?

   iii. Why did Defendant Kim arrange the purchase in Rachel's name despite initial resistance on Rachel's part?

   iv. Why did Rachel aggressively invest in speculative stock without possessing significant investment experience or a substantial investment portfolio?

   v. How did Rachel muster the wherewithal to purchase stock at a $400,000 total purchase price, a number totaling her gross earnings in the last three years?

   vi. What is the contingency in the alleged contingent payment term reached by Rachel and the seller?

   vii. What were the discussions leading up to the December 31 Sale, and when did these discussions commence (*i.e.*, when was Defendant Kim aware that he might be selling shares within a short time after the September 25 Purchase)?

*See* Compl. ¶¶ 24, 27.  Despite Plaintiff's repeated requests, Franklin Wireless has failed to answer these questions.  Compl. ¶ 27.

  These unanswered questions, which Plaintiff believes may be clarified in discovery, support a series of plausible inferences and conclusions that prevent dismissal:

  First, the unanswered questions iii, iv, v & vi yield a plausible conclusion that (1) Defendant Kim is guaranteeing (implicitly or explicitly) Rachel's obligation to cover the purchase price or Defendant Kim plans to cover it in any event, (2) Defendant Kim stands ready to purchase the shares from Rachel (short put position)  if necessary, and/or (3) Defendant Kim has reserved the right to purchase the shares from Rachel (long call position).  Any of those constitutes an ownership position for Defendant Kim for the purposes of Section 16(b).

Second, the unanswered questions i, ii, vi & vii yield a plausible conclusion that Defendant Kim "parked" the shares with Rachel and filed a misleading Form 4 because (1) he may have felt that he was already committed to the seller to purchase the shares, and so could not cancel or delay the September 25 Purchase, but (2) he was also aware that he was likely to sell a greater number of shares less than six months later.  Hey may thus have wanted to give himself a facial defense to the obligation to disgorge short-swing profits under Section 16(b) on the basis that it was Rachel, not he, who bought the shares in the September 25 Purchase and at the same time to file the Form 4 on a "protective" basis to avoid additional liability for failure to file should it be determined that, as Plaintiff contends, he was the beneficial owner of shares nominally owned by Rachel.

Accordingly, the Complaint contains sufficient well-pled allegations to support the inference that Defendant Kim possesses beneficial ownership of the shares purchased by Rachel.  Put simply, in view of Defendant Kim's arrangement of the transaction, the steep discount at which Rachel purchased the shares at issue, Rachel's lack of any material investment experience prior to purchasing speculative stock in an amount equal to her gross earnings over a three-year period, and Defendants' failure to explain what contingencies prompted Rachel to both move past her initial hesitation and muster the wherewithal to purchase the shares, the Complaint offers a compelling picture that "an inference should be drawn that Defendant Kim had a pecuniary interest in and control over the shares purchased in Rachel Kim's name."  Compl. ¶ 27.

### c. Even if the Improper Declarations Submitted by Defendants are Considered, the Complaint States a Claim.

To survive the Motion to Dismiss, Plaintiff need only establish, as it does above, that the Complaint raises a plausible claim.  Notwithstanding Defendants' improper introduction of the declarations of Defendant Kim and Rachel Kim that the Court may not consider on their Motion to Dismiss, and notwithstanding

Defendants' misrepresentations of allegations in the Complaint, the Complaint still states a plausible claim for recovery of short-swing profits under 15 U.S.C. §78p(b).

### i. Defendants' Proposed Explanation of the Facts Does Not Negate Plaintiff's Claim.

The Motion to Dismiss supplies a litany of purported explanations to the questions raised by the Complaint. *Even if* Defendants could provide their version of the events at this stage—they cannot—the Complaint still states a plausible claim for relief.

For instance, Defendants claim that due to Korean restrictions on securities, the seller of the subject shares "had been complaining and demanding to sell the shares even at the original investment cost." Mot. Dismiss at 7. They then claim that notwithstanding the shares' massive discount, Rachel pushed back after being offered the shares, stating that she could only purchase them on an unspecified contingent basis. *See* Mot. Dismiss at 8. Since Defendant Kim, who is clearly a person of means far greater than Rachel, first brought the parties together, *see* Mot. Dismiss at 7-8, it is unclear what had been his discussions with the seller, what assurances or "soft" commitments he may have given that he could not refuse to honor, and why he failed to purchase the shares himself. Indeed, in light of Rachel's initial reluctance and demand for more favorable terms, and in view of the unexplained contingency in the note, the seller would presumably have been better served by an outright sale to Defendant Kim.

Defendants' rendition of the facts is also critically deficient in its failure to explain the nature of Rachel's purportedly "contingent" payment obligation. Defendants limit their explanation of the agreement's payment term to mentioning that Rachel's purchase was "on a contingent payment basis, with a deadline of December 31, 2023," Mot. Dismiss at 8, and a statement that, because of the contingent nature of the payment, Rachel "never had to immediately pay

$400,000." Mot. Dismiss at 12. But these assertions clarify none of the critical details: is the purchase price contingent on the price going up, on Rachel finding the funds for the purchase, on the seller not finding another buyer, or on something else entirely? If the contingency is whether Rachel proffers the funds prior to the December 31, 2023 deadline, Defendants fail to spell out what happens in the event she fails to do so.[4] In a sense, Defendants' reliance on the purported existence of a contingency term simply kicks the can down the road. Rachel must *still* procure $400,000 within three years' time, and Defendants furnish no explanation as to how Rachel will go about doing so.

In short, Defendants' proposed explanation of the relevant events, even when aided by facts propounded by Defendants but found nowhere in the Complaint, fails to challenge the sufficiency of the Complaint. Far from showing the Complaint's implausibility, the explanation is itself implausible.

### ii. Defendants Misrepresent the Contents of the Complaint.

The deficiencies in Defendants' narrative are also apparent from a review of their misrepresentations concerning the Complaint. Defendants seek to misleadingly diminish the pleaded factual support in favor of the Complaint's claims, stating that the Complaint relies on a mere "non-substantive error" concerning the price and amount of the shares in Franklin Wireless's Form 4, Mot. Dismiss at 12, and on an unwarranted assumption of collusion between Defendant Kim and Rachel solely on account of their familial ties, Mot. Dismiss at 12. In other instances, Defendants downright misrepresent Plaintiff's positions, claiming that the Complaint "admits" that Defendant Kim lacked "pecuniary interest in or control over the shares owned by his daughter" and that Defendant Kim's only

---

[4] If the shares are to simply return to the seller, the term would be patently inconsistent with the seller's urgent desire to do away with the shares and with the characterization of the September 25 Purchase in the Form 4 filed with the SEC.

connection with the shares' purchase is his introduction of the parties to the transaction, Mot. Dismiss at 11.  Each of these assertions is demonstrably false.

For example, concerning the claim that the Complaint relies on a non-substantive typographical error in Franklin Wireless's Form 4, the Complaint, in truth, acknowledges the error as an error for the sake of argument and assumes Defendants' statements regarding the correct price and amount of shares purchased.  *See* Compl. ¶¶ 11, 18, 20.  The fact remains that despite her modest investment experience and short work history, Rachel Kim purchased 160,000 Franklin Wireless shares for a total price $400,000—an amount that would appear to any reasonable observer to be well above her means.  Moreover, despite Defendants' claims that Defendant Kim does not have a pecuniary interest in or control over Rachel's shares, Defendants have failed to correct the Form 4, which further supports the plausibility of Plaintiff's Section 16(b) claim.  *See* Compl. ¶ 26.[5]

Further, even a cursory review of the Complaint demonstrates that it provides more support for the inference that Defendant Kim is a beneficial owner of the subject shares than merely his family ties to his daughter, Rachel.  Rachel's relationship with Defendant Kim is but one fact among many—Defendant Kim's orchestration of the transaction, the $100,000 loan from Rachel's mother (O.C. Kim's wife), Rachel's lack of prior investments and apparent means with which to purchase hundreds of thousands of dollars' worth of stock, and Defendants' failure to provide a satisfactory explanation to critical details in the transaction are also pleaded in support.  *See* Compl. ¶¶ 18-27.  As shown above, considered together, these facts state a claim under Section 16(b).

Finally, the Complaint does not admit that Defendant Kim lacks a pecuniary interest in or control over Rachel's shares or that Defendant Kim's only

---

[5] To the extent that it emerges in discovery that the amounts were larger, Plaintiff reserves the right to demand that the larger amounts be disgorged.

involvement with the subject transaction is the parties' introduction. What Defendants try to pass off as Plaintiff's admissions are in fact explanations provided by Franklin Wireless' counsel upon Plaintiff's requests. *See, e.g.*, Compl. ¶ 12 ("*[C]ounsel for Franklin Wireless* stated that . . . Defendant Kim had "no pecuniary interest in or control over the shares owned by his daughter." (emphasis added)); Compl. ¶ 23 ("*According to Franklin Wireless*, in August 2020, Defendant Kim introduced Rachel Kim to a seller in Korea who was eager to sell the shares . . . ." (emphasis added)). Thus, the purported admissions in the Complaint are in fact Defendants' own words. Considered along with the Complaint's other cited facts, their words set forth a plausible claim under Section 16(b).

### d. *Probility* Does Not Support Dismissal.

Defendants rely solely on *Probility Media Corp. v. Isen* in support of dismissal, but that reliance is entirely misplaced. Mot. Dismiss at 9. In *Probility*, this Court based its dismissal on two factors that are not present in this case. First, in *Probility*, a settlement agreement and convertible note, both attached to the complaint, contradicted the allegations of the complaint itself. *See Probility Media Corp. v. Isen*, No. 3:17-CV-2583-CAB-WVG, at *3 (S.D. Cal. Apr. 10, 2018). While the complaint alleged that defendants owned at least 10% of the company's shares, the agreement and note capped defendants' acquisition to 9.99% of the company's total outstanding shares. *Id*. Second, *Probility*'s holding also relied on the fact that the plaintiff could not reasonably plead that the defendants were insiders (that is, beneficial owners of at least 10% of the company's stock) both at the time of purchase and the time of sale. *Id.* at *3-4. Rather, the complaint stated that defendants came to own at least 10% of the stock *as a result of the subject settlement agreement*—the complaint did not (and could not) allege that the defendants purchased any stock *after* they acquired insider status following the date of settlement. *Id.* at *4.

Accordingly, beyond a lengthy block quote of almost the entirety of the opinion, Defendants fail to explain what relevance *Probility* has to this case. Here, the only documents incorporated by reference in the Complaint—the Forms 4—do not in any way contradict the allegations of the Complaint. To the contrary, the Forms 4 are consistent with the allegations, specifically that Defendant Kim was a beneficial owner of the shares purchased by Rachel. Therefore, Defendants' reliance on the *Probility* case offers no support for dismissal and Defendant's Motion to Dismiss must be denied.

### (4) **Defendants' Alternative Rule 12(c) Motion on the Pleadings is Procedurally Improper and Premature and Must Be Denied.**

In the alternative to their Motion to Dismiss, Defendants ask the Court for judgment on the pleadings under Rule 12(c). *See* Mot. Dismiss at 1. However, by Rule 12(c)'s plain terms, a party may only move for judgment on the pleadings "*[a]fter* the pleadings are closed." Fed. R. Civ. P. 12(c) (emphasis added). "The pleadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed, assuming . . . that no counterclaim or cross-claim is made." *In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1079 (S.D. Cal. 2020) (quoting *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005)). Here, Defendants have not filed an answer to the Complaint. The Court therefore must refuse to entertain Defendants' premature Rule 12(c) motion.[6]

### CONCLUSION

For the reasons set forth above, the Motion to Dismiss should be denied.

---

[6] As in the context of Defendants' Rule 12(b)(6) motion, should the Court entertain Defendants' Rule 12(c) motion, the Court must limit its inquiry to the pleadings; however, should the Court delve into material beyond the pleadings, "the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

| | | |
|---|---|---|
| 1 | | |
| 2 | | Respectfully submitted, |
| 3 | Dated: October 18, 2021 | **STERLINGTON, PLLC** |
| 4 | | By: s/Ann Jernow |
| 5 | | Attorneys for Plaintiff |
| 6 | | Email: ajernow@sterlington.net |

-17- PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 3:21-cv-01316-CAB-JLB